**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

IN RE SUBPOENA SERVED ON
STEPHEN K. BANNON,

)
)
)
)
)
)
)
)
)

Case No. 19-mc-00209-TSC

_____

**MEMORANDUM OF LAW IN OPPOSITION TO STRATEGIC
<u>VISION US, LLC'S MOTION TO COMPEL AND FOR CONTEMPT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................2

    A.   The Underlying Action ................................................................................ 2

    B.   Strategic Vision's Tenuous Allegations Regarding The Relevance Of Mr. Bannon's Testimony ................................................................................................ 4

    C.   Strategic Vision's Broad Third-Party Discovery ......................................... 5

ARGUMENT ...............................................................................................................6

I.    THE APEX DOCTRINE PRECLUDES MR. BANNON'S DEPOSITION ...................6

II.   THE DEPOSITION SUBPOENA SEEKS IRRELEVANT INFORMATION AND IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE .......................................10

III.  MR. BANNON'S OBJECTIONS TO THE DEPOSITION SUBPOENA ARE TIMELY ................................................................................................................14

IV.  THE COURT SHOULD DENY STRATEGIC VISION'S REQUEST FOR ATTORNEYS' FEES AND COSTS ...........................................................................15

CONCLUSION ...........................................................................................................16

## **TABLE OF AUTHORITIES**

**Page**

### Cases

*Affinity Labs of Texas v. Apple, Inc.*,
   2011 WL 1753982 (N.D. Cal. May 9, 2011) ................................................................ 8

*\*Alexander v. FBI*,
   186 F.R.D. 1 (D.D.C. 1998) ................................................................................. 7, 8, 9

*Alexander v. FBI*,
   194 F.R.D. 316 (D.D.C. 2000) .................................................................................. 11

*Breiterman v. United States Capitol Police*,
   323 F.R.D. 36 (D.D.C. 2017) ..................................................................................... 9

*Burlington Ins. Co. v. Okie Dokie, Inc.*,
   368 F. Supp. 2d 83 (D.D.C. 2005) ............................................................................ 14

*Call of the Wild Movie, LLC v. Does 1-1,062*,
   770 F. Supp. 2d 332 (D.D.C. 2011) ............................................................................ 6

*Croddy v. Fed. Bureau of Investigation*,
   2005 WL 8168910 (D.D.C. Mar. 30, 2005) ................................................................ 7

*Eastern Profit Corporation Limited v. Strategic Vision US LLC*,
   Case No. 18-cv-2185 (S.D.N.Y. Mar. 12, 2018) ........................................................ 1

*\*Fed. Deposit Ins. Corp. v. Galan-Alvarez*,
   2015 WL 5602342 (D.D.C. Sept. 4, 2015) ............................................................. 7, 9

*In re Fontaine*,
   402 F. Supp. 1219 (E.D.N.Y. 1975) ......................................................................... 14

*Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*,
   103 F.3d 1007 (D.C. Cir. 1997) ................................................................................ 14

*Hesco Bastion Ltd. v. Greenberg Traurig LLP*,
   2009 WL 5216932 (D.D.C. Dec. 23, 2009) .............................................................. 10

*Hobley v. Burge*,
   2007 WL 551569 at *2 (N.D. Ill. Feb. 22, 2007) ....................................................... 7

*United States v. Inst. for Coll. Access & Success*,
   2013 WL 3853239 (D.D.C. July 26, 2013) ............................................................... 14

*Judicial Watch v. U.S. Dep't of State*,
   2016 WL 10770466 (D.D.C. Aug. 19, 2016) .............................................................. 7

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
   2019 WL 3069009 (C.D. Cal. Apr. 29, 2019) .......................................................... 16

*Kelley v. Fed. Bureau of Investigation*,
   2015 WL 13648073 (D.D.C. July 16, 2015) ............................................................... 8

*Kline v. Berry*,
  2012 WL 2376982 (D.D.C. June 25, 2012)...................................................... 8

*Marisol A. v. Giuliani*,
  1998 WL 132810 (S.D.N.Y. Mar. 23, 1998) ...................................................... 9

*Meijer, Inc. v. Warner Chilcott Holdings Co., III*,
  245 F.R.D. 26 (D.D.C. 2007) .......................................................................... 11

*Moriah v. Bank of China Ltd.*,
  72 F. Supp. 3d 437 (S.D.N.Y. 2014) .................................................................. 7

*N. Carolina Right to Life, Inc. v. Leake*,
  231 F.R.D. 49 (D.D.C. 2005) ............................................................................ 6

*Olivieri v. Rodriguez*,
  122 F.3d 406 (7th Cir. 1997) ............................................................................. 7

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ........................................................................................ 16

*United States ex rel. Shamesh v. CA, Inc.*,
  314 F.R.D. 1 (D.D.C. 2016) ............................................................................. 10

*Simplex Time Recorder Co. v. Sec'y of Labor*,
  766 F.2d 575 (D.C. Cir. 1985) .......................................................................... 7

*\*Sourgoutsis v. United States Capitol Police*,
  323 F.R.D. 100 (D.D.C. 2017) ....................................................................... 6, 9

*Stagman v. Ryan*,
  176 F.3d 986 (7th Cir. 1999) ............................................................................. 7

*\*In re Subpoena to Goldberg*,
  693 F. Supp. 2d 81 (D.D.C. 2010) .............................................................. 6, 7, 10

*Wisconsin Province of Soc'y of Jesus v. Cassem*,
  2019 WL 4928866 (D. Conn. Aug. 22, 2019) .................................................. 15

*\*Zimmerman v. Al Jazeera Am., LLC*,
  329 F.R.D. 1 (D.D.C. 2018) .............................................................................. 7

## Rules and Regulations

Fed. R. Civ. P. 26(b)(1)................................................................................. 10, 11

Fed. R. Civ. P. 26(b)(2)(C)(i) ............................................................................ 10

Fed. R. Civ. P. 30(b)(6)...................................................................................... 11

Non-party Stephen K. Bannon submits this Memorandum of Law in Opposition to the Motion to Compel and for Contempt ("Motion to Compel" or "Mot.") filed by Strategic Vision US, LLC ("Strategic Vision") in connection with a breach of contract action (the "Underlying Action") that Eastern Profit Corporation Limited ("Eastern Profit") filed in the United States District Court for the Southern District of New York ("Issuing Court") in March 2018.  *See Eastern Profit Corporation Limited v. Strategic Vision US LLC*, Case No. 18-cv-2185 (S.D.N.Y. Mar. 12, 2018).  The Motion to Compel ignores threshold legal issues, seeks irrelevant discovery based on conspiracy theories better suited for a spy novel than a court of law, and should not be granted.

## INTRODUCTION

This action arises from Strategic Vision's improper and unjustified attempt to compel the deposition of Stephen K. Bannon ("Mr. Bannon")—former Chief Strategist to U.S. President Donald J. Trump and a non-party to the Underlying Action—so that he can sit for a videotaped deposition covering various wide-ranging topics, including matters concerning Mr. Bannon's work for the Trump Administration.  Notably, depositions of former high-ranking government officials like Mr. Bannon are not permitted by this Court where, as here, the information sought from the deposition can be obtained elsewhere.  Beyond that, the information Strategic Vision seeks from Mr. Bannon's deposition is plainly irrelevant to the Underlying Action.

Discovery in the Underlying Action has been extensive, spanning over 15 months and including sweeping third-party discovery and dozens of subpoenas, many of which were issued by Strategic Vision.  As part of its fishing expedition, Strategic Vision has sought endless discovery concerning a highly speculative fraudulent misrepresentation counterclaim regarding Guo Wengui ("Mr. Guo"), an Eastern Profit corporate representative who negotiated the contract at issue with Strategic Vision.  Specifically, Strategic Vision alleges that, during the course of its negotiations with Eastern Profit, Mr. Guo misrepresented that he is a Chinese dissident when he is, according

1

to Strategic Vision, in fact, a supporter of the Chinese Communist Party.  Strategic Vision now claims that had it known that Mr. Guo was a supposed supporter of the Chinese Communist Party, it would not have entered into the contract with Eastern Profit.  As a result, Strategic Vision has sought extensive discovery about Mr. Guo's status relative to China, including through a two-day deposition of Mr. Guo himself.  Dissatisfied with Mr. Guo's responses, however, Strategic Vision now seeks to depose Mr. Bannon after the close of fact discovery to ask the very same questions it has already asked Mr. Guo over the course of his deposition.  Strategic Vision's efforts to depose Mr. Bannon, however, suffer from two fatal flaws.

First, it is well-settled in this Court that depositions of former high-ranking government officials like Mr. Bannon are not permitted where, as here, that information can be obtained elsewhere, *i.e.*, from Mr. Guo.  Second, information about Mr. Guo's status as a Chinese dissident or a spy for the Chinese Communist Party is plainly irrelevant to the Underlying Action, including to Strategic Vision's fraudulent misrepresentation claim.  In fact, during the Rule 30(b)(6) depositions of Strategic Vision's corporate representatives, the witnesses freely admitted that Strategic Vision did not rely on any representations Mr. Guo made about his dissident status.  As a result, any information that Mr. Bannon may or may not possess concerning Mr. Guo's status is simply irrelevant to the Underlying Action.  Beyond that, there is ***nothing*** in the contract between Strategic Vision or Eastern Profit that touches upon Mr. Guo's dissident status.  Thus, for these reasons, discussed more fully below, the Court should deny Strategic Vision's Motion to Compel.

## BACKGROUND

### A.      The Underlying Action

Strategic Vision is a Virginia-based research firm owned by French Wallop ("Ms. Wallop").  Eastern Profit, on the other hand, is a Hong Kong corporation, which provides asset management and investment advice to companies and individuals.  On January 6, 2018, Strategic

Vision and Eastern Profit entered into a written contract in which Strategic Vision agreed to conduct research and provide related reports for Eastern Profit. *See* Exhibit A at ¶ 6. Mr. Guo, a representative of Eastern Profit, negotiated the contract on behalf of Eastern Profit over the course of several meetings with Strategic Vision representatives, including Ms. Wallop and her business associate J. Michael Waller ("Mr. Waller"). *See id.* at ¶¶ 8–10; Exhibit B at ¶¶ 107–108.

According to Eastern Profit, Strategic Vision represented that it had a highly-skilled team of in-house investigators who could conduct the research Eastern Profit requested in a short timeframe and that "its investigators were capable of researching and collecting sophisticated financial tracking and asset tracing information." Ex. A at ¶¶ 11–15. In reliance on these representations, Eastern Profit executed a written contract and paid Strategic Vision a $1 million deposit for the initial phase of work. *Id.* at ¶¶ 16–17. Strategic Vision belatedly delivered the first set of required reports and provided irrelevant, publicly available information, not the detailed tracking research or forensic financial information required under the terms of the contract. *Id.* at ¶¶ 24–26. When Strategic Vision continued to fail to deliver the reports required by the contract, Eastern Profit exercised its right to terminate the contract on the basis of Strategic Vision's breach, sent a written termination notice on February 23, 2018, and demanded that Strategic Vision return the $1 million deposit. *Id.* at ¶¶ 27–28. Strategic Vision refused to comply, and Eastern Profit initiated the Underlying Action on March 12, 2018, alleging claims for breach of contract, fraudulent misrepresentation, and unjust enrichment, and seeking a declaratory judgment that the contract is void and illegal. *See id.* at ¶¶ 30–113.

In response to Eastern Profit's Second Amended Complaint, Strategic Vision unveiled its current counterclaims for breach of contract and fraudulent misrepresentation. *See* Ex. B at ¶¶ 94–95, 104, 106–109. Specifically, Strategic Vision now claims that Mr. Guo misrepresented that he

is a Chinese dissident and that he is, in fact, "a supporter of the Chinese Communist Party." *Id.* at ¶ 109.  While the contract is silent regarding these purportedly material representations, Strategic Vision contends that it would not have entered into the contract but for Mr. Guo's "representations regarding his status, his position toward the Chinese Communist regime, and his purpose for having Eastern Profit enter into the Contract." *Id.* at ¶ 115.

**B.**   **Strategic Vision's Tenuous Allegations Regarding The Relevance Of Mr. Bannon's Testimony**

In support of its fraudulent misrepresentation claim, Strategic Vision outlines a number of unsubstantiated allegations regarding former White House Chief Strategist and non-party Mr. Bannon, which, at their core, have no tenable relation to the claims or defenses raised by Strategic Vision or Eastern Profit.  Strategic Vision's allegations regarding Mr. Bannon center not on any knowledge or relevant information Mr. Bannon possesses, but rather on the supposed effect Mr. Guo's purported "influence operations" had on other individuals.  Mot. at 10; *see also* Ex. B at ¶¶ 11, 15, 60.  Strategic Vision also recites a list of alleged connections between Mr. Guo and Mr. Bannon, including inquiries related to Mr. Bannon's travel and personal finances, none of which have any connection to the written contract, the contract negotiation between Strategic Vision and Eastern Profit, or any representations Mr. Guo allegedly made to Strategic Vision about his dissident status.  *See id.* at ¶ 81.

In light of these allegations and despite their tenuous connection to the claims and defenses in the Underlying Action, Strategic Vision served a third-party deposition subpoena on Mr. Bannon, which purported to compel his appearance for a deposition on November 22, 2019.  *See* Exhibit C at 4.  On November 21, 2019, Strategic Vision agreed to adjourn Mr. Bannon's deposition until December 5, 2019.  *See* Exhibit D.  However, discovery in the Underlying Action closed on November 29, 2019, and before allowing Strategic Vision to proceed with seeking Mr.

Bannon's deposition, the Issuing Court required Strategic Vision to demonstrate good cause for extending the discovery schedule.  *See* Exhibit E.  After a hearing with the parties and Mr. Bannon, the Issuing Court extended the deadline for Mr. Bannon's deposition until January 10, 2020, with the express acknowledgment that forthcoming motions about the deposition subpoena may necessitate additional schedule adjustments.  *See* Exhibit F at 18:3–9.

### C.    Strategic Vision's Broad Third-Party Discovery

Over a 15-month discovery period, Strategic Vision pursued extensive discovery from over a dozen third parties and noticed just as many depositions.  Mr. Bannon is among the various third parties dragged into Strategic Vision's dispute, despite not being a party to the contract, not being a formal or informal representative of either Strategic Vision or Eastern Profit, and possessing no relevant information about the Underlying Action.   Not surprisingly, the Magistrate Judge overseeing the discovery disputes in the Underlying Action has grown increasingly impatient with Strategic Vision's overbroad third-party discovery campaign, recently denying Strategic Vision's request for additional non-party discovery "as disproportionate to the needs of the case."  Text Order, 18-cv-2185 (S.D.N.Y.) (Oct. 21, 2019) ECF No. 184; *see also* Exhibit G at 90:15–25 ("I'm going to just say it, you know, as clearly as I can, Mr. Greim.  They are overbroad.  And what you seem to be doing is saying, 'Gee, I wonder if I turn over this rock; I wonder if I turn over that little stone; I wonder if there's something here; I wonder if there's something there; I wonder if there's some path I can follow where I might find something that smells funny which might get me to do something -- I don't even know what yet, but I'll figure it out later.'  That's not what discovery is.  You've got claims; you have to be able to articulate why something is relevant to a claim.").  Despite these admonitions, Strategic Vision has taken yet another frolic and detour in its discovery efforts, this time aimed at Mr. Bannon.  As discussed below, this Court should put an end to

Strategic Vision's abusive discovery tactics that improperly burden non-parties who have no connection to the Underlying Action.

<u>**ARGUMENT**</u>

In determining whether to enforce a subpoena, the Court may consider "the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011). It is well settled that "non-party status is . . . relevant in considering the burden" that a subpoena imposes on the recipient. *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005). As a result, subpoenas served on non-parties require "a more demanding weighing" to determine whether the relevance of the requested materials justifies such an extraordinary imposition. *In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 88 (D.D.C. 2010).

In this case, Strategic Vision's subpoena far exceeds the bounds of permissible discovery, particularly discovery from a former high-ranking government official and non-party. The subpoena seeks wholly irrelevant information to the underlying contract dispute between Eastern Profit and Strategic Vision based on tenuous conspiracy theories and pure speculation. Moreover, Strategic Vision is attempting to use the subpoena to harass Mr. Bannon by prying into his professional relationship with Mr. Guo, his travel history, and his personal finances. The Federal Rules of Civil Procedure and applicable case law expressly prohibit this type of invasive, irrelevant fishing expedition. The Court should, therefore, deny Strategic Vision's Motion to Compel.

**I.      THE APEX DOCTRINE PRECLUDES MR. BANNON'S DEPOSITION**

As a threshold matter, this Court should deny Strategic Vision's Motion to Compel based on the application of the apex doctrine. Under this doctrine, high-ranking government officials, like Mr. Bannon, "are generally not subject to depositions unless they have some personal

knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Sourgoutsis v. United States Capitol Police*, 323 F.R.D. 100, 114 (D.D.C. 2017) (quoting *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (citing cases)). The apex doctrine "derives from the premise that government officials should be allowed to perform their duties without undue disruption and reflects a desire to protect the integrity of the administrative process." *Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6 (D.D.C. 2018) (citing *Fed. Deposit Ins. Corp. v. Galan-Alvarez*, 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015)).

"[T]o depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition."[1] *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) (collecting cases); *see also Galan-Alvarez*, 2015 WL 5602342, at *3 (the party that "bears the burden of persuasion" flips when the deponent is a "high-ranking government official[]"); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) ("top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions"); *Hobley v. Burge*, 2007 WL 551569 at *2 (N.D. Ill. Feb. 22, 2007) ("The deposition of a high ranking public official creates unique concerns; it should not be a routine part of civil litigation.") (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 409–10 (7th Cir. 1997); *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999)).

---

[1]   While Strategic Vision claims that Mr. Bannon purportedly spoke to the media about Mr. Guo, this does not alleviate its burden to show exceptional circumstances. "The mere fact that [the witness] responded to questions on the record . . . does not give rise to any reason to believe" that the presumption against deposing a high-ranking public officials applies with any less force. *Kelley v. Fed. Bureau of Investigation*, 2015 WL 13648073, at *3 (D.D.C. July 16, 2015); *see also Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011) ("The mere fact that [the witness] made public statements, even on issues that [the party seeking the deposition] considers relevant to its claims, are insufficient to justify [the] deposition.") (collecting cases).

Importantly, the apex doctrine applies to both current and ***former*** high-ranking officials. *See Galan-Alvarez*, 2015 WL 5602342, at *4 ("the general rule [that] prohibit[s] depositions of high-ranking government officials applies to former high-ranking officials") (citation omitted); *Judicial Watch v. U.S. Dep't of State*, 2016 WL 10770466, at *3 (D.D.C. Aug. 19, 2016) ("the party seeking to depose a current or former high-ranking government official must demonstrate '[e]xceptional circumstances justifying the deposition'") (citation omitted); *Croddy v. Fed. Bureau of Investigation*, 2005 WL 8168910, at *1 (D.D.C. Mar. 30, 2005) (recognizing that the apex doctrine "also applies to *former* high-ranking government officials") (emphasis in original) (citation omitted).

In this case, Mr. Bannon satisfies all of the requirements for the apex doctrine to apply. *First*, there is no dispute that Mr. Bannon, as the former Chief Strategist to President Trump, is a former high-ranking government official whose testimony would trigger the apex doctrine.  *See Kline v. Berry*, 2012 WL 2376982, at *4 (D.D.C. June 25, 2012) ("close assistants to the President of the United States" are textbook examples of high-ranking officials) (citing *Alexander*, 186 F.R.D. at 4).

*Second*, Strategic Vision seeks to depose Mr. Bannon on matters pertaining or relating to the work Mr. Bannon performed while employed by President Trump.  *See* Mot. at 4 (Mr. Guo "cultivated friends [*i.e.*, Mr. Bannon] ***in the White House***") (emphasis added).  Indeed, Strategic Vision repeatedly alleges that Mr. Bannon "was reportedly involved in ***White House discussions*** in the summer of 2017 about whether Mr. Guo should be deported to China," Ex. E at 5 (emphasis added), that he "was in contact with Guo either in person or through one or more interlocutors ***while Bannon worked in the White House***," Ex. B at ¶ 79 (emphasis added), and that Mr. Bannon participated in "discussions a few months earlier ***in the White House*** involving a purported effort

8

to extradite Mr. Guo to the UAE," Mot. at 9 (emphasis added).  In fact, Mr. Bannon's work in the White House underpins Strategic Vision's entire theory that Mr. Bannon is "central to Guo's influence campaign in the United States."  Mot. at 4.

*Third*, Strategic Vision cannot show (as it must) that Mr. Bannon "has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means."  *Galan-Alvarez*, 2015 WL 5602342, at *3 (citation omitted); *see also Alexander*, 186 F.R.D. at 5 (depositions of White House officials are to be stayed "until such time as . . . plaintiffs present evidence demonstrating that these individuals have *some* relevant knowledge") (emphasis in original).  In particular, Strategic Vision seeks to question Mr. Bannon about topics such as whether he passed secret messages for Mr. Guo, whether he has been paid by Mr. Guo's companies, and whether Mr. Guo had a purported "influence campaign" in the United States.  Mot. at 3–4.  Not only are these topics unrelated to the contract at issue, but they seek information that is not unique to Mr. Bannon and should be obtained, if at all, from Mr. Guo himself.

In fact, Strategic Vision took Mr. Guo's deposition regarding its fraudulent misrepresentation allegations over the course of two days.  Seemingly dissatisfied with Mr. Guo's testimony, Strategic Vision now tries to take a second bite at the apple by deposing Mr. Bannon. Given the fact that there are less burdensome and intrusive means of obtaining the same (irrelevant) information, the Court should deny Strategic Vision's Motion to Compel and quash the Deposition Subpoena under the apex doctrine.  *See, e.g.*, *Sourgoutsis*, 323 F.R.D. at 115 (quashing subpoena of high-ranking government official where "the deposition subpoena seeks to retread topics that have been explored at depth with [other] witnesses"); *Marisol A. v. Giuliani*, 1998 WL 132810, at *4 (S.D.N.Y. Mar. 23, 1998) (quashing subpoena of city mayor because "it appears obvious that

such information can be gathered from [the other witness]"); *see also Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 54 (D.D.C. 2017) (finding a deposition "imposes an undue burden" where "the deposition subpoena seeks to retread topics that have been explored at depth with [other] witnesses" and deponent "already has had an opportunity to obtain that information from a first-hand source"); *In re Subpoena to Goldberg*, 693 F. Supp. 2d at 87 (quashing non-party subpoena seeking "recollections of other similar conversations" because it would "only produce evidence that is 'unreasonably cumulative or duplicative'") (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

## II.     THE DEPOSITION SUBPOENA SEEKS IRRELEVANT INFORMATION AND IS NOT PROPORTIONAL TO THE NEEDS OF THIS CASE

Even if the Court finds the apex doctrine inapplicable, the Court should still deny Strategic Vision's Motion to Compel because the deposition subpoena seeks irrelevant information. Discovery is only permitted regarding a "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Subpoenas issued to non-parties pursuant to Rule 45 are subject to Rule 26(b)(1)'s overriding relevance and proportionality requirements. *See Hesco Bastion Ltd. v. Greenberg Traurig LLP*, 2009 WL 5216932, at *3 (D.D.C. Dec. 23, 2009) ("it is settled that a subpoena is limited in scope by Rule 26(b)(1) of the Federal Rules of Civil Procedure"). "Once a relevancy objection has been raised, the party seeking discovery must demonstrate that the information sought to be compelled is discoverable." *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30 (D.D.C. 2007) (citing *Alexander v. FBI*, 194 F.R.D. 316, 325 (D.D.C. 2000). Here, none of Strategic Vision's articulated reasons for why Mr. Bannon's testimony is relevant pass this test, and Mr. Bannon should not be compelled to testify at a deposition.

As an initial matter, Strategic Vision concedes that Mr. Bannon's testimony is relevant only to its fraudulent misrepresentation counterclaim in which Strategic Vision alleges that Mr. Guo, in negotiating the underlying contract, falsely represented to Strategic Vision that he "was a Chinese dissident," that "he opposed the Chinese Communist Party," and that "he was actively working to find and publicize research regarding key Chinese leaders that he would then use to weaken the Chinese regime and support a move to a more democratic and U.S.-friendly regime." Ex. B at ¶ 106.  In order to prevail on this claim, Strategic Vision must establish that it reasonably relied on these purported misrepresentations.   Strategic Vision, however, cannot make that showing.

During Strategic Vision's corporate representatives' Rule 30(b)(6) depositions, the witnesses admitted that Strategic Vision did not investigate Mr. Guo's background or whether he is a dissident and now relies on information that was publically available prior to entering into the underlying contract.  Exhibit H at 2–3.  Having admittedly done **nothing** to verify Mr. Guo's dissident status **prior** to executing the contract with Eastern Profit, Strategic Vision cannot seriously contend that this information was supposedly critical to its decision to enter the contract. Thus, regardless of what Mr. Bannon would testify about his opinion of Mr. Guo, Strategic Vision did not rely upon **any** representations about Mr. Guo's dissident status when entering into the contract at issue.  Therefore, Mr. Bannon's testimony is not needed and is, indeed, irrelevant.

Despite admitting that it did not rely on representations about Mr. Guo's dissident status when entering into the contract, Strategic Vision purports to identify three areas where Mr. Bannon could provide supposedly relevant testimony related to Mr. Guo's dissident claims:  (1) Mr. Guo's "contacts with Chinese officials in the fall of 2017 (when Mr. Bannon traveled to Beijing);" (2) Mr. Guo's "U.S. litigation and publicity campaign in 2017–2019 and its effect on Chinese

dissidents and China hawks in the United States," and (3) "the source of payments used to fund Guo's operation from overseas." Mot. at 4.

Even assuming Strategic Vision's allegations related to Mr. Bannon are true, these topics are fishing expeditions far beyond the claims and defenses at issue and any colorable theory of relevance. As an initial matter, Strategic Vision claims that Mr. Bannon is relevant to the underlying case not because of any knowledge or information Mr. Bannon may possess but rather based his "effect" on other individuals. *Id.* Strategic Vision claims that Mr. Guo's "prominent connections with China hawks such as Bannon" persuaded Strategic Vision representatives to meet with Mr. Guo about Eastern Profit's proposed engagement, Ex. B at ¶ 15, and that witnesses have testified that "Mr. Bannon's relationship with Guo Wengui gave Guo an aura of credibility that directly resulted in Strategic Vision's decision to enter a contract with Eastern Profit." Ex. E at 5. It is unclear what relevant testimony Mr. Bannon is expected to provide related to what other people thought about him or his aura. Similarly, Strategic Vision alleges that prying into Mr. Bannon's personal finances "***may show***" that Mr. Guo's dissident claims are incorrect. Mot. at 9 (emphasis added). However, Strategic Vision cannot demonstrate that Mr. Bannon's finances are in any way relevant to the asserted claims or defenses. Even if these allegations about Mr. Bannon and Mr. Guo were true, Strategic Vision has already admitted that it did not conduct ***any*** pre-contract due diligence or investigation into Mr. Guo much less ***rely on*** any purported representations about whether Mr. Guo is actually a dissident. *See* Ex. H at 3. Thus, Mr. Bannon's testimony about Mr. Guo's supposed "influence operations" is plainly irrelevant to the claims and defenses at issue in the Underlying Action. Mot. at 10.

Next, Strategic Vision offers wild speculations about Mr. Bannon's trip to Hong Kong, where he gave a speech at an investors' forum. Strategic Vision claims that after this speech, Mr.

Bannon traveled to Beijing, where he "secretly met for 90 minutes" with Wang Qishan, Ex. B at ¶ 81, the Chinese official "who Guo claims is his arch-enemy."  Mot. at 8.  As Strategic Vision admits, however, "there is little evidence" to support its conspiracy theories about Mr. Guo's purported contact with Chinese officials.  Mot. at 8  Nonetheless, Strategic Vision concludes that "it is reasonable to believe that Bannon's trip involved communications" on behalf of Mr. Guo because "(i) Guo had much to discuss with each party and (ii) Bannon reported on his trip to Guo shortly after it was completed."  *Id.* at 9.  Tellingly, Strategic Vision has not provided ***any*** supporting evidence for its assertions.  It offers no basis for this vast logical leap beyond purported testimony from a witness that Mr. Bannon's not telling him the details of a meeting with a world leader was supposedly "unusual."  Mot. at 9.

Finally, Strategic Vision lodges gratuitous grievances against Mr. Bannon for allegedly citing the Underlying Action as a reason to remove Mr. Waller, "who negotiated and worked on the research agreement for Strategic Vision," from the Committee on the Present Danger-China. Mot. at 5.  But as Strategic Vision admits, "Bannon had never discussed Guo with Waller."  Ex. B at ¶ 85.  Given this critical fact, Strategic Vision cannot possibly maintain that Mr. Bannon's supposed actions in ***2019*** are relevant to Strategic Vision's decision to enter into a contract in ***2018***.

"While the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'"  *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997) (quoting *In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y. 1975) (alteration in original)).  As such, the Court should not permit Strategic Vision to use Mr. Bannon to test the boundaries of relevance.  *See, e.g.*, *United States v. Inst. for Coll. Access & Success*, 2013 WL 3853239, at *4 (D.D.C. July 26,

2013) (quashing a subpoena that could "only by categorized as a fishing expedition unlikely to yield relevant information"); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 83, 88–91 (D.D.C. 2005) ("[O]ne is presumed to have no need of a matter not relevant to the subject matter involved in the pending action.") (citation omitted).

## III.  MR. BANNON'S OBJECTIONS TO THE DEPOSITION SUBPOENA ARE TIMELY

Strategic Vision's arguments regarding Mr. Bannon's supposedly untimely objections are red herrings designed to mislead the Court.  In actuality, there is no dispute that Strategic Vision adjourned Mr. Bannon's original compliance date of November 22, 2019, to December 5, 2019— a date outside the fact discovery window.  *See* Exhibit I at 5 ("We also confirm the December 5 date you proposed on our last call . . . .").  Before allowing the rescheduled deposition to proceed on December 5, however, the Issuing Court requested additional information from Strategic Vision about whether a deposition outside of the discovery period should be permitted.  Thus, on December 2, Strategic Vision's counsel informed Mr. Bannon's counsel that the December 5 deposition "will not go forward without a Court order allowing it to be taken after November 29." *Id.* at 1.

After a hearing with the parties and Mr. Bannon on December 13, 2019, the Issuing Court granted Strategic Vision leave to pursue Mr. Bannon's deposition by January 10, 2020, with the explicit recognition that disputes about the Deposition Subpoena were likely forthcoming.  *See* Ex. F at 18:3–9 (THE COURT:  "And my ruling on this record is purely from a discovery-deadline point of view, you can have until January 10 to take this half-day deposition.  And then you fight it out on a motion to quash elsewhere.  If it comes back to me and if the deadlines get affected by coming back to me or by the length of time it takes to resolve in D.C., if it does, we'll worry about

that then.").  Strategic Vision then proposed a January 10, 2020, placeholder notice date, to which Mr. Bannon agreed.  *See* Exhibit J at 1.

During a meet and confer about the briefing schedule for Mr. Bannon's motion to quash, Strategic Vision demanded an expedited briefing schedule.  Mr. Bannon proposed an alternative schedule that would complete briefing prior to January 10, 2020, but Strategic Vision insisted on immediately filing a motion to compel.  Rather than burden the Court with duplicative motions, Mr. Bannon has promptly responded to Strategic Vision's Motion to Compel on an expedited basis.  There are plainly no timeliness issue with Mr. Bannon's subpoena response, and Mr. Bannon has properly raised his objections to the Deposition Subpoena herein.  *See, e.g.*, *Wisconsin Province of Soc'y of Jesus v. Cassem*, 2019 WL 4928866, at *2 (D. Conn. Aug. 22, 2019) ("the objection to the deposition is timely because it was brought before [deponent's] currently scheduled deposition"); *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2019 WL 3069009, at *4 (C.D. Cal. Apr. 29, 2019) (finding that a party "ha[d] not waived its objections" when it filed objections after the original return date but prior to the extended return date).

## IV.   THE COURT SHOULD DENY STRATEGIC VISION'S REQUEST FOR ATTORNEYS' FEES AND COSTS

Although it provided no argument or legal support for its position, Strategic Vision seeks "reasonable legal fees and expenses to bring this Matter before the Court."  Mot. at 14.  This is plainly improper.  A party is "substantially justified" in opposing discovery "if there is a 'genuine dispute,' or 'if reasonable people could differ as to [the appropriateness of the contested action].'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation omitted) (alteration in original).  As discussed, *supra* Section I, Mr. Bannon has a good faith basis to rely upon the apex doctrine to prohibit his testimony, which precludes any cost or fee award here.  *See Zimmerman v. Al Jazeera Am., LLC*, 16-cv-00013-KBJ-RMM (D.D.C) (Oct. 5, 2018) ECF No. 150 (minute order denying

request for fees and costs where the "objections to the deposition were substantially justified").  In addition, Mr. Bannon was not required to seek relief from the Court prior to the January 10, 2020 notice date, he intended to do so well in advance of that deadline, and he has complied with this Court's order for expedited briefing.  As such, Strategic Vision's request for attorneys' fees is entirely unjustified.

## **CONCLUSION**

For the foregoing reasons, Mr. Bannon respectfully requests that the Court deny Strategic Vision's Motion to Compel and for Contempt.

Dated: December 31, 2019                                    Respectfully submitted,

                                                By:   */s/ William A. Burck*
                                                        William A. Burck  (D.C. Bar # 979677)
                                                        Allison L. McGuire (*pro hac* pending)
                                                        Quinn Emanuel Urquhart & Sullivan, LLP
                                                        1300 I St. NW, Suite 900
                                                        Washington, DC  20005
                                                        Telephone:  202-538-8000
                                                        Facsimile:  202-538-8100
                                                        williamburck@quinnemanuel.com
                                                        allisonmcguire@quinnemanuel.com

                                                        *Counsel for Stephen K. Bannon*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will notify counsel for Strategic Vision of the filing.

*/s/ William A. Burck*
William A. Burck