# Exhibit C

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                            :
                                      Docket #1:18-CV-02185-
 EASTERN PROFIT CORPORATION LIMITED, : JGK-DCF

                    Plaintiff,        :

   - against -                        :

 STRATEGIC VISION US LLC,             : New York, New York
                                        December 13, 2019
                    Defendant.        :
                                        TELEPHONE CONFERENCE
------------------------------------ :


                     PROCEEDINGS BEFORE
             THE HONORABLE JUDGE DEBRA C. FREEMAN,
           UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          PEPPER HAMILTON LLP
                        BY:  CHRISTOPHER B. CHUFF, ESQ.
                        Hercules Plaza
                        1313 Market Street, Suite 5100
                        Wilmington, Delaware 19899
                        302-777-6547

                        PEPPER HAMILTON LLP
                        BY:  JOANNA J. CLINE, ESQ.
                        3000 Two Logan Square
                        Philadelphia, Pennsylvania 19103
                        215-981-4520




Transcription Service: Carole Ludwig, Transcription Services
                        155 East Fourth Street, #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

```
For the Defendant,       GRAVES GARRETT, L.L.C.
Strategic Vision US:     BY:  EDWARD D. GREIM, ESQ.
                              JENNIFER DONNELLI, ESQ.
                         1100 Main Street - Suite 2700
                         Kansas City, Missouri 64105
                         816-256-4144


For Stephen K. Bannon:   QUINN EMANUEL URQUHART & SULLIVAN,
                         LLP
                         BY:  ALLISON L MCGUIRE, ESQ.
                              ALEXANDER B. SPIRO, ESQ.
                         1300 I Street N.W., Suite 900
                         Washington, D.C.  20001
                         202-538-8272
```

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|

None

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|

None

```
 1                        PROCEEDINGS                   4

 2            HONORABLE DEBRA C. FREEMAN (THE COURT):   Hi, it's

 3  Judge Freeman.  Sorry to keep you holding.

 4            MR. EDWARD GREIM:  That's all right, Judge

 5  Freeman.  Good morning.

 6            THE COURT:  Good morning.  Who do I have on?

 7            MR. GREIM:  For the -- well, I guess the movant

 8  here and Strategic Vision, the defendant-counterclaim

 9  plaintiff, you've got Eddie Greim and Jennifer Donnelli.

10  And then we've got two other parties and three other lawyers.

11  And I'll let them introduce themselves.  Maybe we would start

12  with the new people, with --

13            THE COURT:  Well, hold on.  Do I have plaintiff's

14  counsel on the phone?

15            MR. CHRISTOPHER CHUFF:  Yes, your Honor.  This is

16  Chris Chuff and Joanna Cline from Pepper Hamilton for

17  plaintiff, Eastern Profit.

18            THE COURT:  Okay, and then non-parties, do I have a

19  single non-party represented on this call?  Just Mr. Bannon?

20            MS. ALLISON McGUIRE:  Yes, your Honor.  Good

21  morning.  This is Allison McGuire and Alex Spiro from Quinn

22  Emanuel on behalf of Stephen Bannon.

23            THE COURT:  I'm sorry, Ms. McGuire and --?

24            MS. McGUIRE:  Mr. Spiro, Alex Spiro.

25            THE COURT:  Okay.  Is that everybody, is there
```

1                           PROCEEDINGS                    5

2   more?

3           MR. GREIM:  That's everybody, your Honor.

4           THE COURT:  All right.  So I have fairly lengthy

5   submissions, but I see my role here at the moment as rather

6   narrow.  As I understand, the subpoena was served in D.C.; and

7   if it's complied with, compliance would be in D.C., which

8   means a motion to quash it or a motion for contempt would be

9   made in D.C., and only if something were transferred to me

10  would that be back in front of me under Rule 45.

11          But right now I have control over discovery

12  deadlines.  And as I understand it, what Mr. Greim is looking

13  for is for me to bless either an extension or a reopening of

14  the discovery period, depending how you look at it, to allow

15  for this deposition to go forward even without opining as to

16  whether the subpoena should be quashed or the witness should

17  be held in contempt for noncompliance.  Is that right,

18  Mr. Greim?

19          MR. GREIM:  That's right, your Honor.  We're asking

20  for a spot reopening -- maybe that's the best way to say

21  it -- a spot reopening for a what will probably be a half-day

22  deposition of Mr. Bannon.

23          THE COURT:  All right, I will note that discovery

24  has closed.  But I will also note, in fairness, that this

25  application was made prior to the close of discovery.  And if

1                          PROCEEDINGS                      6

2    it has been ruled on immediately, it would have been for an

3    extension of discovery, not a reopening.  So in fairness to

4    Strategic Vision, I think that the appropriate standard for

5    looking at this would be a standard for an extension of

6    discovery and not to reopen discovery, although I'm not sure

7    how much difference it makes with respect to my analysis.

8            I'll note for counsel for Mr. Bannon, since you

9    haven't been on calls with me before, that I do have recording

10   equipment available for phone calls to chambers so that it's

11   possible to have a record of these conferences.  I do have

12   this recording equipment on.  It is not always perfect;

13   sometimes it does not work, but there's always hope that it

14   does.  And if anyone wants to obtain a transcript, you can do

15   that by following the instructions that are available at the

16   Court's website.  They just recently changed the website, and

17   I believe the way to go about finding the information on how

18   to order it is if you go to the top of the website on the

19   right, there are some lines that indicate there's a dropdown

20   menu.  You click on that, and you go to Trial Support.  And

21   from Trial Support you go to Courtroom Technology.  And once

22   you get to Courtroom Technology, you scroll down looking for

23   something about electronic court recordings or ECR.  It's the

24   same electronic recordings we have in the courtrooms that are

25   outfitted with it, and so it's the exact same procedure for

1                                  PROCEEDINGS                    7

2    ordering a transcript even if it's a phone call with chambers.

3            In any event, that said, the factors that would

4    influence me, as I outlined to Mr. Greim previously, relate to

5    whether there were diligent efforts made to obtain this

6    testimony during the discovery period or whether there was a

7    lack of diligence and last-minute efforts.  I told Mr. Greim

8    that what he had put before me before was not persuasive as to

9    the diligence of the efforts that were made but that my denial

10   of the request for, let's just call it a carve-out of this

11   discovery period to allow for this one deposition, that that

12   denial of you without prejudice to renew upon a better showing

13   of due diligence that was made and that Strategic Vision was

14   essentially thwarted in its ability to obtain this testimony

15   within the discovery period and on a reasonable amount of

16   notice.

17           I've now gotten a submission from Mr. Greim which

18   lays out attempts to serve a subpoena dating all the way back

19   to, I think, September and recitations of all the different

20   efforts that were made with process servers and a private

21   investigator and different places where service was attempted

22   and repeated times when service was attempted and so on.  And

23   I must say that is fairly persuasive that reasonable diligence

24   was undertaken to get a subpoena served and to get this

25   discovery within the discovery period.  I also had told

1                          PROCEEDINGS                    8

2  Mr. Greim that, if he were going to renew this application, he

3  should let Mr. Bannon's counsel know about it so I could hear

4  from counsel for the non-party if he wanted to be heard on

5  this question of whether there was reasonable diligence and

6  whether there was any thwarting of the efforts or whether it

7  all seemed to be very last minute to you.  But I'm not sure,

8  you know, how much you can say to refute the recitation by

9  Mr. Greim of the efforts that were made, whether they ended up

10 being productive or not.  At least it doesn't seem to me that

11 he and his, you know, team of process servers and so on were

12 sitting on their hands for a long period of time and suddenly

13 trying to do this in fewer than ten days before the close of

14 the discovery period.  Would anyone like to address that?

15          MS. McGUIRE:  Yes, your Honor.  This -- yes, your

16 Honor, thank you.  This is Allison McGuire for Mr. Bannon.  I

17 think as an initial matter if we could take a step back and

18 look at the facts that discovery in this case began in August

19 of 2018, and Strategic Vision didn't even begin contemplating

20 serving Mr. Bannon until the final two months of that

21 discovery window.  And as Strategic Vision knows, Mr. Bannon

22 is a well-known public figure with extensive professional

23 commitments around the world, and there are very foreseeable

24 challenges to serving a subpoena to a public figure.  And in

25 fact, I think an important point that --

1                               PROCEEDINGS                    9

2              THE COURT:  Well, let me just interrupt here a

3    second.  It's my understanding that the subpoena, to the

4    extent it has relevance, is relevant to a counterclaim.  When

5    was that counterclaim asserted?

6              MS. McGUIRE:  Yes, your Honor.  That counterclaim

7    was first filed in July of 2019.  Yet, Strategic Vision

8    waited an additional two months, until September 25, to serve

9    the subpoena to Mr. Bannon.

10             THE COURT:  Okay, so the counterclaim that made

11   this arguably relevant was filed in July and the subpoena was

12   served in September.  And the close of discovery at that point

13   was when?

14             MS. McGUIRE:  My understanding is that it was

15   November 29, your Honor.

16             THE COURT:  Well, you know, that's not -- you know,

17   on its face, that's not unreasonable.  I mean, it's not like

18   serving a subpoena at the 11th hour.  It sounds like, like I

19   said, a number of efforts were made to try to track Mr. Bannon

20   down.  And, you know, just because someone is a public figure

21   doesn't mean that, you know, trying to serve a subpoena for

22   two months is in and of itself unreasonable.

23             MS. McGUIRE:  Your Honor, I think there's an

24   important factor that we need to point out here and that's

25   outside of the attempts that Strategic Vision identified were

1                          PROCEEDINGS                    10

2   certain subpoenas dated for -- with a notice date of

3   October 10, and they tried to serve that subpoena five times

4   after the notice date.  So I understand how Strategic Vision

5   has purportedly identified 11 times that they attempted to

6   serve Mr. Bannon in a two-month period; but five of those

7   times, it wasn't a facially valid subpoena.  And it waited

8   another four weeks after the October 10 subpoena to even issue

9   another subpoena to Mr. Bannon (indiscernible).  And I think

10  that this demonstrates not only in less than two months that

11  it waited before it attempted to subpoena Mr. Bannon the first

12  time, but now an additional four weeks' delay between issuing

13  a second subpoena.  So this isn't diligence; it's delay.

14           THE COURT:  Is it true that counsel for Mr. Bannon

15  at one point seemed to suggest that maybe counsel would work

16  with Mr. Greim for responding by a December 5 date?

17           MS. McGUIRE:  Yes, your Honor.  I had conversations

18  with Mr. Greim on, I believe it was, November 18 and the 21st,

19  when we discussed his theories of relevance about Mr. Bannon;

20  and again, I explained that Mr. Spiro and I and Mr. Bannon all

21  had busy schedules and that we didn't receive reasonable

22  notice of this subpoena, the subpoena served on November 14,

23  to proceed with a November 22 deposition.  And we had -- I

24  requested and Mr. Greim agreed to a two-week extension of that

25  notice date in order to give us the time to respond to the

1                               PROCEEDINGS                    11

2    subpoena.

3           THE COURT:  Well, so what happened to that position

4    that, you know, if it were December 5, then maybe you could

5    work something out?

6           MS. McGUIRE:  Well, your Honor, I think now that

7    we've had time to explore Mr. Greim's theories of relevance,

8    we see no colorable clean-up elements here; and to drag

9    Mr. Bannon, who is not a party to the contract and is not

10   alleged (indiscernible) in any underlying contract

11   negotiations, into this dispute at this point in time seems

12   beyond unreasonable.  And I think that were the Court to grant

13   Mr. Greim's extension to the discovery schedule, we would

14   apply to quash in the compliance court in D.C.

15          THE COURT:  Well, again, I'm not going to get into

16   issues of -- that might be raised on a motion to quash because

17   that motion to quash would not -- first of all, it hasn't been

18   made; and second of it all, it wouldn't be made in front of

19   me.  And it seems to me that those issues are appropriately

20   directed to the court where compliance is required under the

21   rules, although I recognize that that court might end up

22   kicking it back to me, at which time I would take those issues

23   up.

24          I really am looking at my role right now as a narrow

25   one, which is were sufficiently diligent efforts made to

1                              PROCEEDINGS                    12

2   justify allowing some more time on the clock for this

3   deposition, assuming, you know, that a motion to quash doesn't

4   have legs or a motion -- you know, other motions relating to

5   the subpoena don't result in some kind of protective order.

6   But I think that it's hard for me to say that starting to make

7   efforts a couple of months before a deadline, you know, is

8   something that is insufficient.

9           Mr. Greim, what's your response about not changing

10  the return date on the subpoena even while continuing to

11  attempt to serve it?

12          MR. GREIM:  Your Honor, we actually had an

13  October 11 subpoena.  So -- and I'm sorry, our initial

14  submission identified September 25 and November 7, but we had

15  an October 11 subpoena.  So after the October 4 attempted

16  service failed, we issued another one on October 11 and tried

17  to serve that one on the 13th, 14th,, 19th and 25th.

18          THE COURT:  And what would the return date have

19  been on that one?

20          MR. GREIM:  That one would have been November 1.

21          MS. McGUIRE:  Your Honor, we (indiscernible).

22          MR. GREIM:  Yes, and I -- your Honor, I'm sorry,

23  that should have been attached to our initial -- should have

24  been attached to our initial showing.  And as I was preparing

25  this morning, looking at the response I saw that it wasn't.

1                          PROCEEDINGS                    13

2   And we just forgot to include that as an attachment; we should

3   have.

4            THE COURT:  Well, provide it to counsel for

5   Mr. Bannon right away, please.

6            MR. GREIM:  Absolutely.

7            THE COURT:  For that matter, why don't you just

8   file something with the court that says this was inadvertently

9   omitted and add it so that we have a full record here on the

10  docket of relevant information.  And we do both, you know,

11  file it with the court and provide a copy to counsel.

12            So here's what I'm going to do.  In recognition that

13  the application to extend the discovery period was made before

14  the close of discovery and based on the rather lengthy

15  recitation of all of the efforts that were made to serve

16  Mr. Bannon pretty well before the close of discovery -- and

17  I'll also note, by the way, that even though he is a public

18  figure, he's not currently a member of the administration, he

19  is a private citizen, as far as I know.  So he may have

20  speaking engagements and do other things and travel a lot, but

21  so do lots of other people.  A lot of people have busy jobs;

22  it doesn't mean that two months is on its face an unreasonable

23  period of time to try to obtain somebody -- obtain service on

24  someone.

25            So I'm going to allow a carve-out of this discovery

1                          PROCEEDINGS                    14

2   period for this one deposition, without making any rulings

3   that would be relevant to a motion to quash.  So you can't go

4   to D.C. and say by extending this discovery deadline Judge

5   Freeman found, even implicitly, that this was an appropriate

6   subpoena -- okay? -- nor can you say she found it was

7   inappropriate; I'm not reaching those issues.  I'm only

8   looking at the discovery timeframe and whether efforts were

9   made to obtain this discovery within the discovery period.

10  And I'm finding that sufficient efforts were made.

11          Now, in terms of a carve-out period of time, I would

12  want this deposition to happen relatively soon, with

13  appropriate, you know, consultation with counsel for the

14  witness so that it's at a reasonably convenient time.  But I

15  don't want it to stretch out forever.  I understand there may

16  be motion practice in D.C.  Together with motion practice in

17  D.C., I assume you could, you know, you could ask for a stay

18  while it's being resolved -- I get that.  But I still don't

19  want to have this floating indefinitely.

20          So to allow time for motion practice in D.C. and to

21  allow time for his busy schedule and given the holidays, which

22  are now upon us, whereas ordinarily I would say a couple of

23  weeks, I will stretch it out longer than that.  Let's see,

24  today is the -- today is what? -- oh, today is Friday the

25  13th, look at that.  Two weeks would take you right between

1                              PROCEEDINGS                      15

2    Christmas and New Year's.  I'll stretch it out to January 10

3    as the deadline for making this deposition happen, which I

4    understand from Mr. Greim would likely be half a day.  If you

5    can find a half a day in there to put on the calendar and

6    hold, even while you are litigating this in D.C., I think that

7    would be a good plan because I'm sure in this litigation

8    plaintiff -- and perhaps defendant, as well -- wants to get a

9    move on with the next phase of the case.

10           I'm not sure, for that matter, the next phase of the

11   case need be put on hold because of this.  Are summary

12   judgment motions anticipated, or are we going to expert

13   discovery?  Are we going to expert discovery, or is that done,

14   or are there no experts?

15           MR. GREIM:  No, neither side has designated an

16   expert; we just have translators.

17           THE COURT:  Well, I would suggest that summary

18   judgment need not necessarily await this one deposition, one

19   half-day deposition, and that -- I mean, you can take it up

20   with the district judge if you think otherwise.  But it would

21   seem to me you could always do a short supplement to a brief

22   on one side or the other if you get some testimony that you

23   think adds to a point.  But I would think for summary judgment

24   it's probably not going to be critical, and perhaps you

25   shouldn't be holding up the works.  Does anybody --

1                        PROCEEDINGS                    16

2              MR. GREIM:  Excuse me, your Honor.  We --

3              THE COURT:  -- anybody disagree with that?

4              MR. GREIM:  No.  But there are a couple of data

5   points that might -- I don't think they'd change anything, but

6   just so you know -- and, first of all, we would intend to use

7   this in our summary judgment motion and response -- because I

8   think we'll probably have cross-motions.  But we have a pre-

9   motion conference with Judge Koeltl on January 14.  And then

10  we are going to be -- the current deadline for filing the

11  motions is January 10, and so we are going to be filing --

12  this is Eastern Profit and Strategic Vision --

13             THE COURT:  I'm sorry, say that again?  You're

14  going to be before Judge Koeltl before the motion deadline?

15             MR. GREIM:  Well, no, it'll be after.  So just to

16  make this clear, currently the current deadline is January 10;

17  however, that falls before the current -- but Judge Koeltl

18  wants you to come in for a pre-motion conference.  So we're

19  coming in for that conference on the 14th, which is actually

20  four days after the deadline.  So they're going to be asking

21  Judge Koeltl, Eastern Profit and Strategic Vision

22  jointly -- and I bet Chris Chuff, we may get that on file even

23  today -- to move back the deadline to January -- the last

24  Friday in January just so that the deadline actually falls

25  after the conference, which is -- it's done in the ordinary

1                          PROCEEDINGS                    17

2   course.

3              THE COURT:  I see.  Well, what I'm going to do is

4   I'm going to let -- well, if -- by the way, if your deadline

5   is moved, you'll have this deposition before your deadline,

6   assuming it happens by January 10.  But I will let Judge

7   Koeltl know that discovery is done and the parties are ready

8   for summary judgment with the exception of this one

9   deposition, which is still a little bit in the air, where I've

10  blessed the carve-out but where there's likely to be motion

11  practice and likely to still be some further delay.  And then

12  it was my view that summary judgment motions could go forward

13  without it; but if he has a pre-motion conference, the parties

14  might have something they want to say about that and he can

15  look at that separately.  So I'll clue him in, and I'll tell

16  him that you may be making an application to move the

17  conference date and just fill him in on what's going on.  And

18  then you make whatever application you make.

19             MR. CHUFF:  Your Honor, with the conference date, we

20  are good with that; it will be the deadline for filing the

21  motion, just to move it to after the conference date.

22             THE COURT:  Right.  I understand.  I understand.

23             MR. GREIM:  Okay.

24             THE COURT:  Okay, so you'll be asking to keep the

25  conference and move the motion date.  I'll let him know that

1                            PROCEEDINGS                    18

2    that's a likely application.

3             And my ruling on this record is purely from a

4    discovery-deadline point of view, you can have until

5    January 10 to take this half-day deposition.  And then you

6    fight it out on a motion to quash elsewhere.  If it comes back

7    to me and if the deadlines get affected by coming back to me

8    or by the length of time it takes to resolve in D.C., if it

9    does, we'll worry about that then.  But for now I'm going to

10   urge counsel to speak in good faith and try to pin down a date

11   and have it on the calendar maybe closer to the January 10

12   date to give you time to try to work out your differences.

13            I would also urge you strongly to try to avoid the

14   motion practice in D.C. and see if you can, you know, agree on

15   some parameters for this deposition.  Parties in this case --

16   I know we now have a non-party -- but have been able at times

17   to discuss parameters for things and work out, you know,

18   reasonable limitations and get things focused.  It's a case

19   that has some sort of odd parameters to it; it's not purely a

20   contract case.  So I'd urge you to try -- like I said, try to

21   conserve resources and avoid unnecessary motion practice, if

22   you possibly can.

23            MR. GREIM:  Thanks, your Honor.

24            THE COURT:  Anything else from anybody?  No?

25            Anything else for Mr. Bannon?  No?

1                          PROCEEDINGS                    19

2              MS. McGUIRE:  Nothing for Mr. Bannon.

3              THE COURT:  All right.  Thank you, all.  Take care,

4     everybody.

5              MR. CHUFF:  Thank you.

6              (Whereupon, the matter is adjourned.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20

# C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Eastern Profit Corporation Limited v. Strategic Vision US LLC, Docket #18-cv-02185-JGK-DCF, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature_____

*Carole Ludwig*

Carole Ludwig

Date:    December 17, 2019